CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
for Roanoke
SEP - 6 2007
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ROBERT EDWARD PATTERSON, <br> Petitioner, | ) <br> ) <br> ) <br> ) | Civil Action No. 7:07CV00344 |
| v. | ) <br> ) <br> ) | **MEMORANDUM OPINION** |
| GENE M. JOHNSON, DIRECTOR <br> OF THE VIRGINIA DEPARTMENT <br> OF CORRECTIONS, <br> Respondent. | ) <br> ) <br> ) <br> ) <br> ) | By: Hon. Jackson L. Kiser <br> Senior United States District Judge |

Petitioner Robert Edward Patterson ("Patterson"), a Virginia Department of Corrections inmate proceeding pro se, brings this action for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Respondent filed a Motion to Dismiss, pursuant to Rule 5 of the Rules Governing Section 2254 Cases, to which Patterson filed a timely response, making the matter ripe for disposition. Upon careful review of the extensive state court records and the pleadings and exhibits submitted by the parties, I conclude that Respondent's Motion to Dismiss must be granted.

### I. Factual Background and Procedural History

The evidence presented at Patterson's bench trial indicated that Tina Patterson ("Tina") and Patterson married in June of 2000. On May 17, 2002, while Patterson was incarcerated, Tina obtained a preliminary protective order prohibiting Patterson from having contact of any type with her. Patterson was subsequently released from jail. On May 23, 2002, Tina returned to her home in a Madison Heights trailer park to find the locks removed from the dwelling. Tina contacted the police. While responding to Tina's request for assistance, a sheriff's deputy found Patterson inside Tina's home. Initially Patterson claimed that he did not know about the protective order. Later,

1

Patterson said that he thought the protective order permitted him to come on the property if Tina was not at home. Patterson claimed that he had some belongings in the home and that he had come to retrieve them.

On June 5, 2002, Tina obtained a protective order prohibiting Patterson from having any contact with her, including that he not call, write, follow, stalk, or harass her. The order was to remain in effect for two years.

On July 15, 2002, at about 11:00 p.m., Tina returned home after visiting and drinking a beer with a friend. She later heard suspicious noises outside her home. Tina called her friends June Gerholdt ("Gerholdt") and Gene Barnett ("Barnett") to report what she had heard. When Tina went outside to investigate the noises, she saw a man in a black "Ninja-looking suit." Tina turned around, and was struck in the face by Patterson with both his fist and an Igloo cooler. The person in the "Ninja" clothing ran away and disappeared. Patterson continued to strike Tina in the head and mouth, causing her injuries.

Patterson then grabbed Tina's hair and pulled her through the trailer park and into the woods. As they walked through the woods, Patterson threatened to cut Tina's throat and kill her. Patterson then exhibited a knife. Patterson pulled Tina's pants down and forced her to have sexual intercourse with him. During the incident, Patterson held Tina to the ground although she was fighting him. Patterson next took Tina inside an abandoned house. Tina's feet had been cut and injured along the way, so she told him that she needed to rest. Patterson forced Tina to have sex with him for the second time on a bed. Tina told Patterson to stop, but he threatened to kill her.

Afterwards, Patterson said that they needed to find Tina some shoes because they were going to walk "at least forty miles." Patterson found a pair of boots and forced Tina to wear them. Tina

begged Patterson to release her, but he refused. Patterson and Tina walked a distance from the abandoned house. When they sat down to rest, Patterson refused to release Tina because he believed that she would call the police. Patterson returned Tina's eyeglasses which he had taken from her earlier that evening. Eventually, Tina started walking away from Patterson. When she realized that Patterson was not following her, she ran to her home.

Tina immediately called Gerholdt and reported what had happened. When Gerholdt arrived at Tina's home, she found Tina crying, upset, and injured. Tina told Gerholdt that Patterson had beaten her and had sex with her. Gerholdt took Tina to the police station, and subsequently to the hospital. Tina was examined by April Rasmussen, a forensic nurse examiner. Tina appeared distraught and in a lot of pain. Tina's head and face were swollen and bruised, and she had scratches and bruising on her arms and legs, and a large bruise on the right hip. Tina also had bruising in her genital area caused by blunt force trauma. The Commonwealth introduced evidence of Tina's injuries.

The day after the incident, Investigator Lindy Inge ("Inge") collected the clothing Tina had been wearing during the accident. Fifteen to twenty strands of hair similar to Tina's were with the clothing. Sperm was found on the shirt that Tina had been wearing at the time of the incident. DNA testing proved the sperm to be consistent with that of Patterson. Walking with Tina, Inge retraced the path along which Patterson had taken her. Inge located a crumpled cigarette pack, which Tina said Patterson had dropped, near the abandoned house. Inge also found the aforementioned boots in the woods near the house.

Jay Patterson ("Jay"), Patterson's brother, testified that Tina called him at about 9:00 p.m. on July 15. According to Jay, Tina wanted to get in touch with Patterson. Tina said that she loved

Patterson and wanted to talk to him. Jay believed that Tina was drunk when he talked to her by telephone. Tina admitted talking to Jay by telephone that night, but denied telling him that she still loved Patterson and wanted to reconcile with him.

Testifying on his own behalf, Patterson said that Tina called him on the night of July 15 and requested that they talk about their marriage. Tina went to where Patterson was living and drank beer with him. Eventually, Patterson and Tina had consensual sexual intercourse. At some point Patterson indicated that he wanted to retrieve some of the property that he had left in Tina's trailer. Patterson and Tina went to the abandoned house to get some marijuana plants that Barnett had left there. At the house, Tina performed oral sex upon Patterson. Afterwards, Tina wiped Patterson's semen on her shirt. Tina said that she would "drop the restraining order" against Patterson if he dropped the forgery and uttering charges that he had obtained against her. When Patterson refused, Tina said that she was going to make Patterson wish that he had. Patterson admitted to having five prior felony convictions.

At the conclusion of the trial, the judge accepted the Commonwealth's evidence, and rejected Patterson's testimony. Patterson was ultimately convicted in the Circuit Court of Amherst County upon convictions of spousal rape, abduction, and two counts of violating a protective order (Circuit Court Case Nos. CR02011612-01; CR02011612-02; CR02011541 and CR02011590-00). On December 14, 2001, he was sentenced to a total term of thirty years and twenty-four months, with fifteen years suspended.

Patterson appealed his convictions to the Court of Appeals of Virginia but that court dismissed the appeal on July 7, 2003, because it was not timely filed. On a petition for rehearing, the Court of Appeals again denied Patterson's petition for appeal by an order dated July 30, 2003.

Patterson then filed a habeas corpus petition in the Supreme Court of Virginia on July 11, 2003, raising various claims of trial error. In that petition, Patterson alleged no claims of ineffective assistance of counsel and made no mention of being denied the right to appeal his convictions. On October 2, 2003, that court, sua sponte, dismissed Patterson's petition as procedurally defaulted pursuant to Slayton v. Parrigan, 205 S.E.2d 680 (Va. 1974). None of the allegations of trial error contained in that petition have been raised in Patterson's instant petition.

Patterson then filed a subsequent habeas corpus petition in the Supreme Court of Virginia on August 8, 2003, alleging one claim of ineffective assistance of counsel for failure to perfect an appeal of his convictions to the Court of Appeals of Virginia. In response, the Supreme Court of Virginia granted Patterson leave to file an appeal of his convictions to the Court of Appeals of Virginia on January 6, 2004.[1] Patterson's belated appeal was ultimately refused by a single judge of the Court of Appeals of Virginia on November 17, 2004, and then a three-judge panel on February 25, 2005. Thereafter, the Supreme Court of Virginia refused Patterson's second-tier appeal on August 24, 2005. A petition for rehearing was also denied by the Supreme Court of Virginia on November 10, 2005.

Patterson next filed his third habeas petition in the Supreme Court of Virginia on July 17, 2006. In that petition, claims (a) through (g) are the same allegations that Patterson now represents in claims (a) through (g) of his current petition. On February 1, 2007, the Supreme Court of Virginia dismissed all seven claims as an abuse of the writ under Code of Virginia § 8.01-654(B)(2) and

---

[1] During this time Patterson also filed a petition for a writ of mandamus in the Supreme Court of Virginia on May 21, 2004, complaining that his supplemental brief was refused by the Court of Appeals and that discovery of police reports should be ordered to attack the credibility of the victim. The Supreme Court dismissed the petition on September 24, 2004.

5

Dorsey v. Angelone, 544 S.E.2d 350, 352 (2001). The court stated, "these claims, the facts of which were known prior to petitioner's previous petitions for a writ of habeas corpus, were not previously raised." (Resp't Ex. 1 at 3.) On May 1, 2007, the Supreme Court of Virginia denied Patterson's petition to set aside the judgment. On July 13, 2007, Patterson filed the present § 2254 petition for writ of habeas corpus.

## II. Patterson's Claims

Patterson raises the following claims in his § 2254 Petition:

(a) Patterson was denied the effective assistance of counsel when counsel failed to obtain readily available impeachment evidence;

(b) The trial judge erred when he refused to allow cross-examination of the victim about her false police report conviction, depriving Patterson of due process under the Fourteenth and Sixth Amendments;

(c) Patterson was denied the effective assistance of counsel when counsel failed to object to the trial judge's erroneous ruling that the victim could not be impeached by a conviction for filing a false police report;

(d) The trial judge erred in striking the testimony of the victim from the record when she openly admitted that she was convicted of filing a false police report;

(e) Patterson was denied the effective assistance of counsel when counsel failed to object to the trial judge's exclusion of the victim's admission;

(f) Patterson was denied the effective assistance of counsel when counsel failed to have the preliminary hearing transcribed;

(g) Patterson was denied the effective assistance of counsel when counsel failed to impeach the victim;

(h) Patterson was denied his Fourteenth Amendment right to due process when the Commonwealth refused to provide material, exculpatory evidence after his criminal conviction;

(i) The Supreme Court of Virginia erred by ruling that Patterson's first habeas corpus petition was not properly filed and that it counted as his first attack on his convictions;

(j) The Supreme Court of Virginia erred by not taking into consideration that once Patterson was granted a belated appeal, his post-conviction counter was re-set to zero;

(k) The Supreme Court of Virginia erred by not taking into consideration that the petitioner did not have to list all claims in his second habeas petition.

## III. Claims (a) through (g)

The doctrine of procedural default provides that "a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule." Burket v. Angelone, 208 F.3d 172, 183 (4th Cir. 2000). A state procedural rule is adequate if it is regularly or consistently applied by the state courts, Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and it is independent if it does not depend on a federal constitutional ruling, Ake v. Oklahoma, 470 U.S. 68, 75 (1985). Where a state procedural rule is both adequate and independent, it will bar consideration of the merits of claims on habeas review unless the petitioner demonstrates cause for the default[2] and prejudice resulting therefrom or that a failure to consider the claims will result in a fundamental miscarriage of justice[3]. Coleman v. Thompson, 501 U.S. 722, 750 (1991); Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998).

In adjudicating claims (a) through (g) in Patterson's third state habeas petition, the Supreme Court of Virginia examined Patterson's petition alongside the entire record of Patterson's first and second state habeas corpus proceedings. The court found that Patterson should have raised the claims at the time he brought his other state habeas petitions. Holding that Patterson's claims ran afoul of either Virginia Code § 8.01-654(B)(2)[4], or the rule in Dorsey v. Angelone, the court

---

[2] The Supreme Court has defined cause as "some objective factor external to the defense" which impeded efforts to comply with the state procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). To establish cause, a petitioner must show "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." Hedrick v. True, 443 F.3d 342, 366 (4th Cir. 2006).

[3] To show "actual innocence," the only miscarriage of justice recognized as sufficient to excuse procedural default, a petitioner must show that "it is more likely than not that no reasonable juror would have convicted him" if jurors had received specific, reliable evidence not presented at trial. Schlup v. Delo, 513 U.S. 298, 327 (1995); see also Royal v. Taylor, 188 F.3d 239, 243-44 (4th Cir. 1999).

[4] § 8.01-654(B)(2) states: such petition shall contain all allegations the facts of which are known to petitioner at the time of filing and such petition shall enumerate all previous applications and their disposition. No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous

7

expressly dismissed Patterson's claims on the adequate and independent state ground that they were procedurally defaulted. See Mackall v. Angelone, 131 F.3d 442, 446 (4th Cir. 1997) ("[W]e have held on numerous occasions that the procedural default rule set forth in § 8.01-654(B)(2) constitutes an adequate and independent state-law ground for decision").

Patterson's pleadings do not include any contentions that there is cause for the default; he instead attacks the application of the state procedural rules that gave rise to the default as a "denial of constitutional rights" because, in his opinion, his previous two habeas petitions should not be "counted." (Pet'r Resp. at 3.) Patterson contends that the allegations in this first habeas petition were unrelated to his conviction and concerned only charges of forgery and uttering lodged in the Amherst County Circuit Court that were ultimately dismissed against Tina Patterson, on February 5, 2003. (Pet'r Writ Habeas at 22.) The record does not support this contention.[5] He further contends that since his second habeas petition was used for the sole purpose of regaining a direct appeal, it therefore cannot be "counted" as a petition and his "post-conviction counter" should be "reset to zero." (Pet'r Resp. at 2-3.)

Patterson fails to recognize that in 2005, Virginia Code § 8.01-654(B)(2) was amended to allow a state habeas petitioner to raise new claims in a second petition when the "sole allegation" of the first petition is a denial of appeal claim. This amendment does not apply to Patterson, because

---

petition. The provisions of this section shall not apply to a petitioner's first petition for a writ of habeas corpus when the sole allegation of such petition is that the petitioner was deprived of the right to pursue an appeal from a final judgment of conviction or probation revocation, except that such petition shall contain all facts pertinent to the denial of appeal that are known to the petitioner at the time of the filing, and such petition shall certify that the petitioner has filed no prior habeas corpus petitions attacking the conviction or probation revocation.

[5] In his July 8, 2003 petition, Patterson claimed that the presiding Judge and the Commonwealth Attorney were both biased and prejudiced against him. He claimed several instances of prosecutorial misconduct and error on the part of the trial court. He further claimed that there was insufficient evidence to convict him based on several discrepancies presented in the evidence. (Pet'r Writ Habeas Ex. 28 at 12.)

8

his habeas petition concerning his appeal was filed in 2003. Patterson cites no legal support for his claim that the amendment should apply retroactively.[6] See Wiggins v. Virginia Dept. of Corrections, 190 Fed. Appx. 295 (4th Cir. 2006) (finding that § 8.01-654(B)(2) does not provide that it applies retroactively, nor has the state supreme court ruled that it applies retroactively). Furthermore, Patterson's petition concerning his appeal was his second habeas petition. Accordingly, as Patterson was aware of all of the facts underlying his claims (a)-(g) at the time he filed his first habeas petition, I find that he has not established cause for his procedural default nor has he established actual prejudice resulting from that default. Patterson also fails to present any new evidence that would tend to suggest his innocence. Therefore, I conclude that Patterson fails to demonstrate "actual innocence" so as to excuse his procedural default. Accordingly, I find Patterson's claims (a)-(g) to be barred and, therefore, they must be dismissed.

## IV. Claim (h)

In claim (h), Patterson contends that he was denied his Fourteenth Amendment right to due process when the Commonwealth refused to provide him with exculpatory evidence, specifically Tina's initial statement. He claims that this statement will "prove his innocence." (Pet'r Writ

---

[6] Patterson also relies on In re Goddard, 170 F.3d 435, 437 (4th Cir. 1999), as support for his contention that his previous habeas petitions should not bar him from bringing the current petition. The Goddard court held that, where a defendant used his first post-conviction motion solely to reinstate his right to direct appeal, his subsequent post-conviction motion, after he lost on direct appeal, was not a "second or successive motion," so as to require authorization by the Court of Appeals; when the first motion was granted to reenter judgment and permit direct appeal, the counter of collateral attacks pursued was reset to zero. Patterson's present claims and the underlying factual issues are remarkably similar to the ones presented in Marshall v. Johnson, No. 2:06cv515, slip op. at *3 (E.D. Va. July 10, 2007). That court found that petitioner's reliance on In re Goddard was misplaced as Goddard involved the federal successive petition rule under 28 U.S.C. § 2255 rather than a § 2254 petition. The court stated: "[in petitioner's] case, the Virginia Supreme Court found his claim barred by a Virginia procedural rule. 'It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.' Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Clearly the Virginia Supreme Court's refusal to hear [petitioner's] claims rested squarely on the state procedural bar provided in the Virginia Code. There was no interweaving of any federal law within Virginia's refusal to consider [petitioner's] claims." I agree with the general analysis of the Marshall court. I also note that, regardless, Patterson's petition concerning his appeal was not his first habeas petition, but his second.

Habeas at 20.) As Patterson did not raise that claim at trial, on appeal, or in his state habeas petition, he has both waived and procedurally defaulted claim (h). See Bassette v. Thompson, 915 F.2d 932, 936-37 (4th Cir. 1990); see also Teague v. Lane, 489 U.S. 288, 298 (1989); Slayton v. Parrigan, 205 S.E.2d 680 (Va. 1974).[7] Patterson again fails to demonstrate cause, actual prejudice, or the possibility of a fundamental miscarriage of justice. Accordingly, this claim must also be dismissed.

## V. Claims (i), (j), and (k)

In claims, (i), (j), and (k), Patterson essentially argues that The Supreme Court of Virginia erred by ruling that his third petition was an abuse of the writ under § 8.01-654(B)(2). Because these claims challenge only the constitutionality of the procedures employed in the state post-conviction proceedings and not the constitutionality of his conviction and sentence, they cannot provide a basis for federal habeas relief. See Wright v. Angelone, 151 F.3d 151, 159 (4th Cir. 1998) (finding that claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief (citing Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988))). Patterson's claims challenge the Supreme Court of Virginia's ruling during a state post-conviction proceeding on a matter that was within the discretion of the court. The claims in no way challenge the constitutionality of his conviction or sentence. They are merely complaints about the application of a Virginia statute by a post-conviction court. Therefore, these claims are not cognizable on federal habeas review because they raise no constitutional issues. See Wright, 151 F.3d at 159.

---

[7] I find Patterson's claim that he was not aware of this claim before he filed the current habeas motion to be inconsistent with the record and accord it no merit. His 42 U.S.C. § 1983 action, filed in this district, indicates that he attempted to gain access to Tina's initial statement less than a year after he was convicted.

## VI. Miscellaneous Motions

In seeking habeas corpus relief, Patterson requests that I grant an evidentiary hearing. I determine that an evidentiary hearing is not required, as purely legal issues are presented and the record before the court adequately resolves the legal issues raised. See Rule 8 of the Rules Governing Section 2254 Cases. Therefore, Patterson's request for an evidentiary hearing will be denied. Similarly, as Patterson is unable to demonstrate that he may be entitled to habeas relief, his motions for discovery and an expansion of the record will also be denied. Finally, Patterson's motion to appoint counsel will also be denied. Rule 6(a) of the Rules Governing § 2254 Cases provides that a court may appoint counsel if it is "necessary for effective utilization of discovery procedures." Rule 8(c) mandates that counsel be appointed only "[i]f an evidentiary hearing is required." Here, it is apparent that petitioner can adequately represent himself, and an evidentiary hearing is not necessary, as the petition is without merit.

## VII. Conclusion

Accordingly, I find that Patterson is not entitled to § 2254 relief. Respondent's Motion to Dismiss will be granted and an appropriate Order issued this day. The Clerk is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to Petitioner.

ENTER: This 6th day of September, 2007.

Senior United States District Judge